**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| JO BRISTER, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.  5:19-CV-00088-RWS |
| | § | |
| v. | § | |
| | § | |
| FEDERAL BUREAU OF PRISONS,  FCI | § | |
| TEXARKANA, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. On May 11, 2020, the Magistrate Judge issued a Report and Recommendation, recommending Plaintiff's Motion for Attorneys' Fees (Docket No. 34-2) be **DENIED**. The Magistrate Judge further recommended that Defendant's Motion to Dismiss (Docket No. 38) be **GRANTED-AS-MODIFIED** and that Plaintiff's above-entitled and numbered cause of action be **DISMISSED WITHOUT PREJUDICE**.

Plaintiff filed objections to the Report and Recommendation. Defendant filed a response to the objections. The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## I.  Background

Jo Brister ("Plaintiff") originally brought this action against the Federal Bureau of Prisons ("BOP" or "Defendant") in the Northern District of Texas pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Docket No. 1.  Plaintiff's husband, Alton Brister, was incarcerated at FMC Fort Worth at the time. *Id.* ¶ 6. According to Plaintiff's original

complaint, up until December 17, 2017, FMC Fort Worth permitted Plaintiff to visit her husband there accompanied by her service dog, but the facility refused to allow the service dog to accompany Plaintiff after December 17, 2017. *Id*. ¶¶ 6–7.

Plaintiff alleges she has been medically diagnosed with depression, anxiety and panic attacks in connection with her Sjogren's Syndrome, and these conditions give rise to a disability within the meaning of Section 504 of the Rehabilitation Act.  *Id*. ¶¶ 3–4.  Plaintiff further alleges that:

> In light of Ms. Brister's disability, her treating physician prescribed her the use of a service dog (the 'Service Dog') to assist her in her daily life and tasks. Ms. Brister has personally trained the Service Dog to perform tasks designed to alleviate her panic attacks when they arise. Furthermore, the Service Dog generally provides Ms. Brister with emotional support at all times, separate and apart from the specific tasks it is trained to accomplish in the event of a panic attack. Ms. Brister requires the accompaniment of the Service Dog at all times outside of her home environment to avoid panic attacks and the like which arise through her disability.

*Id*. ¶ 5. Plaintiff originally brought this lawsuit under Section 504, seeking injunctive relief.  *Id*. ¶ 8.

 On June 14, 2019, Defendant filed a Suggestion of Mootness, informing the court that Plaintiff's husband had been transferred to a different institution, FCI Texarkana, located in Texarkana, Texas. Docket No. 9.  In her response, Plaintiff asserted her general complaint was not moot because "the new facility in Texarkana, also under the control of the Bureau of Prisons, refuse[d] to allow Plaintiff to visit her husband accompanied by her service dog."  Docket No. 11 at 1.  Plaintiff requested leave to amend her complaint to remove FMC Fort Worth as a defendant, to add the Texarkana facility as a defendant, and to amend the relevant allegations and prayer for relief as appropriate. *Id*. at 1–2.  Plaintiff later filed a separate motion for leave to amend her complaint, as directed by the court.  Docket No. 16.

On July 8, 2019, the court granted Plaintiff's motion for leave to amend and directed the Clerk of the Northern District of Texas to docket Plaintiff's First Amended Complaint.  Docket No. 17. That same day, the Northern District of Texas entered a Transfer Order, transferring the above case to the Eastern District of Texas, Texarkana Division.  Docket No. 19.

In Plaintiff's First Amended Complaint ("FAC"), Plaintiff alleges her husband has been moved to FCI Texarkana, but the BOP's "policies still apply, and Ms. Brister cannot visit her husband with the accompaniment of her Service Dog."  Docket No. 18 ¶ 9.  According to Plaintiff, FCI Texarkana also refused to allow her to visit her husband with her Service Dog accompanying her, citing "the Federal Bureau of Prisons' policy in denying her requests in this regard."  *Id.* ¶ 10.

According to Plaintiff, by preventing her "from bringing the Service Dog into first the FW Facility and now FCI Texarkana so that she can visit her husband, Defendants have effectively prevented Ms. Brister from entering these facilities at all and thus from visiting her husband at all, due to the severity of her disability."  *Id.* ¶ 29.  Plaintiff alleges the "Service Dog has not in the past disrupted any function of any facility of the Bureau of Prisons, including the FW Facility, or caused any regulatory violation."  *Id.* ¶ 30. According to the FAC, allowing Plaintiff to bring the Service Dog into FCI Texarkana so that she can visit her husband would constitute a reasonable accommodation for Plaintiff. *Id.* Plaintiff alleges an injunction is in the public interest as it is in the public interest for Defendant to uphold federal law and not to discriminate against the disabled. *Id.* ¶ 34.

Plaintiff further alleges as follows:

Requiring any further exhaustion of administrative remedies by Plaintiff or her husband would (1) be futile, in that the Federal Bureau of Prisons has already admitted that its policies are inconsistent with the remedies requested by Plaintiff in this matter, and (2) the warden of the FCI Texarkana facility has not responded

to the requests of Plaintiff or her husband for a determination on this matter, and Plaintiff suffers irreparable harm with each day that she cannot visit her husband.

*Id.* ¶ 35. In her prayer for relief, Plaintiff requests the Court award her costs and fees, including reasonable attorneys' fees and enjoin Defendant temporarily and then permanently from refusing to allow Plaintiff to bring the Service Dog into FCI Texarkana for the purposes of visiting her husband in FCI Texarkana. Docket No. at 8.

Following transfer of the case to this Court, Plaintiff filed an Amended Motion for Preliminary Injunction on August 6, 2019. Docket No. 23. In her motion, Plaintiff requested the Court preliminarily enjoin the BOP and FCI Texarkana from continuing to refuse to allow her to bring her Service Dog into FCI Texarkana to accompany her during visits to her husband.[1] *Id.* According to Plaintiff, although the Service Dog qualifies as a service animal for purposes of the Americans with Disabilities Act, it can serve as the basis of a Section 504 claim even if it only provides emotional support. *Id.* ¶ 14. The BOP opposed Plaintiff's amended motion for preliminary injunction, asserting Plaintiff failed to exhaust administrative remedies and failed to meet her burden to obtain relief.  Docket No. 24. Defendant further argued Plaintiff refused to comply with BOP policy requiring proper certification for the entry of service animals onto BOP institutional grounds.[2]

---

[1] As noted by the Magistrate Judge, the FAC and the docket sheet list both the Federal Bureau of Prisons and FCI Texarkana as defendants. Following transfer to this Court, summons was issued as to FCI Texarkana on July 16, 2019. Docket No. 22. No return of service has been filed to date. No attorney has made an appearance on behalf of FCI Texarkana to date. Therefore, while Plaintiff references "Defendants" throughout her briefing, the Court references "Defendant" herein (Federal Bureau of Prisons).

[2] Defendant stated BOP's "Visiting Regulations" Program Statement ("P.S") 5267.09 provides that visitors are precluded from bringing animals on to institutional grounds, except for animals that assist persons with disabilities. Docket No. 24 at 2, n.1.  P.S. 5267.09 further states the "visitor must provide staff with certification that the animal is trained for that purpose." *Id.*

Case 5:19-cv-00088-RWS-CMC   Document 46   Filed 08/05/20   Page 5 of 25 PageID #:  394

On September 10, 2019, the Magistrate Judge called the matter for hearing on the amended motion for preliminary injunction. However, the parties advised the Court they did not want to proceed with the hearing because they were discussing a potential resolution of the issue. *See* Docket No. 30. In a meeting in chambers with the Magistrate Judge on September 10, 2019, in an effort to avoid a preliminary injunction hearing, the parties agreed to have a third-party testing agency determine whether the Service Dog met certain security requirements. Docket No. 34 at 4.

On November 27, 2019, Plaintiff filed a motion to withdraw her amended motion for a preliminary injunction and for attorneys' fees. Docket No. 34. According to that motion, since the filing of the amended motion for preliminary injunction, Defendant had "permitted Plaintiff to bring her Service Dog into the Facility for the purposes of accompanying her in visiting her husband in the [FCI Texarkana] Facility." *Id.* at 1 (further representing Defendant has expressed a "willingness to continue to allow Plaintiff to proceed in this manner"). As a result, Plaintiff moved the Court to withdraw her amended motion for a preliminary injunction. Docket No. 34-1. Arguing "Defendants have modified their behavior in a way that directly benefits Plaintiff and have, in so doing, materially altered the legal relationship between the parties," Plaintiff also requested the Court enter an "order providing its judicial sanction to the result reached by the parties and grant Plaintiff her attorneys' fees as well." Docket No. 34-2.

On December 16, 2019, the BOP filed a response to the motion to withdraw and for attorneys' fees and a separate motion to dismiss Plaintiff's FAC.[3] In its response, the BOP stated

---

[3] In its separate motion to dismiss, Defendant argues Plaintiff's lawsuit is now moot. Docket No. 38. According to Defendant, Plaintiff has recently complied with BOP policy and provided to FCI Texarkana the necessary certification regarding the training of her service animal; thus, Plaintiff has been able to visit her husband at FCI Texarkana with her service animal. *Id.* at 1. In her response, Plaintiff asserts her claim is not moot because the BOP could move her husband again and "Defendant has not shown that it will not repeat its misconduct." Docket No. 40 at 2. She requests a judicial determination with respect to the relevant issues, such that another move to another BOP facility will not force her to litigate this issue again. *Id.*

Page **5** of **25**

it had no objection to the motion to withdraw the amended motion for preliminary injunction.

Docket No. 37 at 1.  The BOP only opposed Plaintiff's request for attorneys' fees.

On January 30, 2020, the Magistrate Judge granted Plaintiff's motion to withdraw the amended motion for preliminary injunction (Docket No. 34-1), leaving the contested issue of attorneys' fees and costs (Docket No. 34-2) for consideration in a separate report and recommendation.

## II.   Report and Recommendation

On May 11, 2020, the Magistrate Judge issued a 40-page Report and Recommendation ("Report"), recommending Plaintiff's motion for attorneys' fees be denied. The Magistrate Judge further recommended Defendant's motion to dismiss be granted as modified. Rather than recommend this matter be dismissed with prejudice as moot as requested by Defendant, the Magistrate Judge recommended the Court dismiss this matter without prejudice. *See* Docket No. 42. After setting forth the applicable law regarding the BOP's "Visiting Regulations" program,[4]

---

[4] The BOP reviews and investigates prospective visitors under Program Statement ("PS") 5267.09 to ensure that the visit would not pose any threat to the security and good order of the institution. *Shelikhova v. Thomas*, No. 4:15-CV-472-MW-GRJ, 2016 WL 7757282, at *7 (N.D. Fla. Dec. 1, 2016), *report and recommendation adopted*, No. 4:15CV472-MW/CAS, 2017 WL 149813 (N.D. Fla. Jan. 13, 2017). PS 5267.09 further provides wardens with the authority to restrict inmate visiting when necessary to ensure the security and good order of the institution. *Id.* "There is little question that there is a legitimate government interest in ensuring the security and good order of FCI [Texarkana]." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979) ("Central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves.")). As set out by the Magistrate Judge, PS 5267.09, publically available on the Internet at www.bop.gov, provides, in pertinent part, as follows:

> 17. VISITING REGULATIONS REGARDING PETS
>
> Visitors are precluded from bringing animals on to institutional grounds, except for animals that assist persons with disabilities. The visitor must provide staff with certification that the animal is trained for that purpose.

Report at 8-9.

the Magistrate Judge set out the applicable law regarding Section 504 of the Rehabilitation Act.
Report at 9–12.

The Magistrate Judge noted that even though Plaintiff had withdrawn her amended motion
for preliminary injunction, she still seeks an order memorializing and approving the parties' prior
resolution of their dispute, "thus providing judicial sanction to that result, and granting Plaintiff
her reasonable attorneys' fees." *Id.* at 12 (quoting Docket No. 34 at 5–6). According to the
Magistrate Judge, Plaintiff argues that if the Court "enters the order Plaintiff proposes, effectively
providing judicial sanction to the arrangement already in place between the parties, the litigation
will have resulted in relief which has materially altered the legal relationship between the parties."
*Id.* (quoting Docket No. 34 at 6). The Magistrate Judge further noted Plaintiff asserts she has
obtained relief which modifies Defendant's behavior "in a way that directly benefits Plaintiff—
relief which this Court will solidify, if it enters the order Plaintiff proposes." *Id.*

The Magistrate Judge set out Defendant's opposition to Plaintiff's requests, including the
fact there has been no judicially-sanctioned relief to date. Report at 13 (citing Docket No. 37 at 8).
Specifically, Defendant argues as follows:

> The BOP has already granted access to Brister's service animal due to her
> compliance with policy. There is no relief to grant. A request for injunctive relief
> generally becomes moot upon the happening of the event sought to be enjoined... .
> Thus, the Motion for Preliminary Injunction and Amended Complaint are both
> moot at this point, as there is no way for the court to order relief that modifies the
> defendant's behavior.

*Id.*

According to the Magistrate Judge, in its separately filed motion to dismiss, Defendant
argues Plaintiff's lawsuit is now moot. Report at 13 (citing Docket No. 38). In that motion,
Defendant contends "Plaintiff has recently complied with BOP policy and provided to FCI
Texarkana the necessary certification regarding the training of her service animal; thus, Plaintiff

has been able to visit her husband at FCI Texarkana with her service animal." *Id.* at 13–14 (citing Docket No. 38 at 1). According to Defendant, other than a preliminary injunction, the FAC seeks only attorneys' fees (to which Defendant has separately responded) and a permanent injunction allowing the entry of Plaintiff's service animal at FCI Texarkana (which has now occurred due to Plaintiff's compliance). *Id.* at 14.

Regarding Defendant's claim that she has no remaining viable claim because Defendant has now allowed her service animal to accompany her into the facility, the Magistrate Judge noted Plaintiff asserts in her reply in further response to her motion for attorneys' fees that Defendant could move her husband to a different facility at a later date and Defendant has not shown it will not repeat its misconduct. *Id.* at 13 (citing Docket No. 39 at 2). According to Plaintiff, only when a governmental entity assures the court of continued compliance will voluntary cessation moot the litigation. *Id.* (citing Docket No. 39 at 3).

The Magistrate Judge stated the Fifth Circuit Court of Appeals has held that for a party to qualify as a "prevailing party" it "must (1) 'obtain actual relief, such as an enforceable judgment *or a consent decree*; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement.' " Report at 16 (quoting *Salazar v. Maimon*, 750 F.3d 514, 521 (5th Cir. 2014) (emphasis in original)). In considering whether Plaintiff is a "prevailing party," the Magistrate Judge found instructive a recent case, wherein the court declined to order a fee award to the plaintiff's counsel for the litigation of a preliminary injunction and district court merits litigation. Report at 18–25 (discussing *Yeh v. United States Bureau of Prisons*, No. 3:18-CV-943, 2020 WL 1505661, at *8 (M.D. Pa. Mar. 30, 2020) and two cases distinguished by the court in *Yeh*, *Miraglia v. Bd. Of Supervisors La. State Museum*, 901 F.3d 565 (5th Cir. 2018) and *Berke v.*

*Federal Bureau of Prisons*, 942 F. Supp. 2d 71 (D.D.C. 2013)). With these cases in mind, the Magistrate Judge considered whether Plaintiff carried the burden to prove she is a "prevailing party." Report at 25.

The Magistrate Judge concluded Plaintiff failed to meet any of the necessary elements for her to be awarded fees as a "prevailing party." *Id.* at 26–38. As part of her analysis, the Magistrate Judge addressed Defendant's argument that Plaintiff's claims are now moot. Among other things, the Magistrate Judge concluded the voluntary cessation exception does not apply. The Magistrate Judge concluded the lawsuit is now moot; thus, she recommended Defendant's motion to dismiss be granted, as modified, and this matter be dismissed without prejudice.

## III.   <u>Plaintiff's Objections</u>

In her objections to the May 11, 2020 Report, Plaintiff filed less than two pages of substantive argument, addressing only the Magistrate Judge's findings and conclusions regarding whether her claims are now moot. Specifically, Plaintiff asserts as follows:

> The Report bases its recommendations on the idea that Defendants now allow Plaintiff's dog to accompany her into the FCI Texarkana facility and that, because this was the relief Plaintiff requested, the case is now moot. Such voluntary cessation of wrongful conduct would not ordinarily lead to mootness. *See, e.g.*, *Miraglia v. Bd. of Supervisors of the La. State Museum*, 901 F.3d 565, 572 (5th Cir. 2018). Only when a government entity "assures [the] court of continued compliance, and the court has no reason to doubt the assurance," will voluntary cessation moot the litigation. *Id.* The Report explains that government actors are entitled to a presumption of good faith when such assurances are made. Report, at 37. However, Plaintiff respectfully objects that the government here has made no assurances to the Court of compliance with the law. The issue here is whether Defendants will comply with the law by allowing an emotional support animal to accompany Plaintiff without its certification as a service animal. Because Defendants pretend contrary to fact that they received such certification with respect to Plaintiff's current dog, they have assured this Court that they will allow this dog to accompany Plaintiff. However, they have made no assurances with respect to compliance with the law going forward.
>
> If Plaintiff's husband is transferred or if Plaintiff must use a different animal to accompany her, both of which are reasonably likely given the fact that both events

occurred during the course of this dispute, then Defendants have offered no assurances that they will not repeat the same conduct that led to the current litigation. Thus, the case is not moot and should not be dismissed. Rather, Plaintiff should have the opportunity to present her case on the merits.

Docket No. 43 at 1–2 (footnotes omitted).

According to Defendant's response, of the two issues addressed in the Report–prevailing party attorney fees and mootness–Plaintiff chose to object only to the mootness conclusion. Docket No. 45 at 3. Defendant further argues as follows:

Because Plaintiff failed to object to the Report's conclusion that Plaintiff cannot satisfy the prevailing-party analysis necessary to be awarded attorney fees. . ., the Court should review this conclusion under the deferential 'clearly erroneous, abuse of discretion and contrary to law' standard of review that applies when reviewing unobjected-to recommendations. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

*Id.* Defendant asserts the Magistrate Judge's "conclusions would stand up to either this deferential standard or a full de novo review. . . ." *Id.* at 4.

Substantively, Defendant argues the Magistrate Judge correctly concluded that Plaintiff failed to establish any of the necessary elements for her to be awarded attorneys' fees as the prevailing party. *Id.* at 5–7. Defendant further argues Plaintiff's claims are moot, and no exception to mootness applies. *Id.* at 7–10.

## IV.  **Rehabilitation Act**

Section 504 of the Rehabilitation Act "provides that no otherwise qualified handicapped individual in the United States shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial Assistance." *Houston v. DTN Operating Co., L.L.C.*, No. 4:17-CV-00035, 2017 WL 4653246, at *6 (E.D. Tex. Oct. 17, 2017) (quoting 29 U.S.C. § 794 (a) and citing *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997)). The

Rehabilitation Act is operationally identical to the Americans with Disabilities Act ("ADA") in that both statutes address discrimination against those with disabilities, but, "while the ADA is limited to public entities, including private employers, the Rehabilitation Act extends to programs or activities that, though private, receive federal funding." *Id.* (quoting *Burroughs v. Shared Hous. Ctr.*, No. 3:15-CV-333-N-BN, 2015 WL 4077216, at *6 (N.D. Tex. June 17, 2015), *report and recommendation adopted*, No. 3:15-CV-333-N, 2015 WL 4089756 (N.D. Tex. July 6, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010))).

The close relationship between Section 504 of the Rehabilitation Act and Title II of the ADA means that precedents interpreting either law generally apply to both. *Smith v. Harris Cty., Texas*, No. 19-20194, 2020 WL 1873205, at *4 (5th Cir. Apr. 15, 2020) (citing *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002)). The Rehabilitation Act and the ADA are judged under the same legal standard, and the same remedies are available. *Houston*, 2017 WL 4653246, at *6  (citing *Kemp*, 610 F.3d at 234 (citing *Delano-Pyle*, 302 F.3d at 574)). "Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the [Rehabilitation Act]." *Id.* (citing *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 n.4 (5th Cir. 1995)).

However, the definition of service animal applicable to the ADA does not apply to sections 501, 503 or 504 of the Rehabilitation Act. *Houston*, 2017 WL 4653246, at *6 (citing 28 C.F.R. § 35.103 (noting the inapplicability of Title V to the Rehabilitation Act)). Thus, emotional support animals are not excluded from a Section 504 of the Rehabilitation Act claim. *Houston*, 2017 WL 4653246, at *6 (citing *Velzen v. Grand Valley State University*, 902 F. Supp. 2d 1038, 1047 (W.D. Mich. 2012)).

The ADA and the Rehabilitation Act "impose upon public entities an affirmative obligation

to make reasonable accommodations for disabled individuals." *Smith*, 2020 WL 1873205, at *4 (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) and citing *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (observing that "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion")). An accommodation is reasonable if "it does not impose undue financial or administrative burdens or 'fundamentally alter the nature of the service, program or activity.'" *Smith*, 2020 WL 1873205, at *4 (quoting *Cadena v. El Paso County*, 946 F.3d 717, 724 (5th Cir. Jan. 3, 2020) (quoting 28 C.F.R. § 35.130(b)(7))). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith*, 2020 WL 1873205, at *4 (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).

Most federal fee statutes allow a court to award fees only to a prevailing party. *Dunster Live, L.L.C. v. LoneStar Logos Mgmt. Co., L.L.C.*, 908 F.3d 948, 951 (5th Cir. 2018) (citing *Buckhannon Bd. and Care Home, Inc. v. W.V. Dept. of Health and Human Res.*, 532 U.S. 598, 602–03 (2001)). Like many federal civil rights statutes, the Rehabilitation Act has a fee shifting provision that allows a prevailing party in litigation to collect attorneys' fees for having vindicated the statutory rights of the disabled. *Yeh v. United States Bureau of Prisons*, No. 3:18-CV-943, 2020 WL 1505661, at *3 (M.D. Pa. Mar. 30, 2020) (citing 29 U.S.C. § 794). Specifically, 29 U.S.C. § 794a(b) provides that in "any action or proceeding to enforce or charge a violation of a provision [the Rehabilitation Act]," the court "may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Id.*

"Prevailing party" is a term of art that Congress has used in numerous attorney's fees statutes.[5] *Dunster*, 908 F.3d at 952 (citing *Buckhannon*, 532 U.S. at 603 n.4); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) ("The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' "). Prevailing party status ordinarily requires being ahead when the final whistle blows in a case, not at halftime. *Id.* at 953 (citing *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 480 F.3d 734, 742–43 (5th Cir. 2007)). There is an exception that allows fees when a court grants a preliminary injunction because of a likelihood of success on the merits and that injunction causes the defendant to change its conduct thus mooting the case. *Id.* (citing *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008)) ("*Dearmore* test"). However, that principle is consistent with the overarching "prevailing party" requirement of judicial action that changes the parties' relationship. *Id.* (citing *Buckhannon*, 532 U.S. at 604–05).

## V.   **De Novo Review**

### a.   **Specific findings and conclusions regarding "prevailing party" status**

In analyzing whether Plaintiff has carried the burden to prove she is a "prevailing party" entitled to attorneys' fees, the Magistrate Judge noted Defendant had allowed what Plaintiff asked for in her FAC and the now-withdrawn amended motion for preliminary injunction—that she be allowed to bring the Service Dog into FCI Texarkana for the purposes of accompanying her in

---

[5] When used in a federal fee-shifting statute, "the term 'prevailing party' [is] a legal term of art." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 8 (1st Cir. 2011) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)). "The concepts that shape the term apply broadly to the entire universe of federal fee-shifting statutes." *Hutchinson*, 636 F.3d at 8 (citations omitted). "Although fee-shifting statutes do not define 'prevailing party,' the Supreme Court has offered guidance on the term." *Davis v. Abbott*, 781 F.3d 207, 213 (5th Cir. 2015). The Supreme Court has long held the "touchstone" of the prevailing party inquiry is "the material alteration of the legal relationship of the parties." *Berke v. Federal Bureau of Prisons*, 942 F. Supp. 2d 71, 74 (D.D.C. 2013) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)).

visiting her husband in FCI Texarkana. Report at 27. Thus, the question before the Magistrate

Judge was first whether, at this stage, Plaintiff has succeeded on significant claims affording her

some of the required relief with the necessary judicial *imprimatur*. *Id.*

In considering this question, the Magistrate Judge first considered whether the "unique fee

issue" presented in this case satisfies the "*Dearmore* test," which the Court noted above is an

exception that allows fees when a court grants a preliminary injunction because of a likelihood of

success on the merits and that injunction causes the defendant to change its conduct thus mooting

the case.[6] Report at 28, n.11. The Magistrate Judge concluded as follows:

> In this case, the Court has not in any way analyzed the merits of the particular
> controversy. With regard to Plaintiff's amended motion for preliminary injunction,
> the Court continued the September 10, 2019 hearing on Plaintiff's amended motion
> for preliminary injunction by agreement of the parties. Docket Entry # 30. On
> November 27, 2019, Plaintiff filed a motion to withdraw the amended motion for
> preliminary injunction and request for attorneys' fees. Docket Entry # 34 . On
> January 30, 2020, the Court granted Plaintiff's unopposed motion to withdraw the
> amended motion for preliminary injunction (Docket Entry # 34-1), reserving the
> issue of whether Plaintiff is entitled to attorneys' fees and costs. *See* Docket Entry
> # 41. Because the Court has not entered any order addressing the merits of the now-
> withdrawn amended motion for preliminary injunction, the Court does not find
> prevailing-party status under *Dearmore*.

*Id.* at 30.

The Magistrate Judge then considered whether Plaintiff has secured judicially-sanctioned

relief in this case sufficient to achieve prevailing party status under the traditional three-part test

---

[6] As pointed out by the court in *Dearmore*, the Supreme Court has never expressed a view "on whether, in the absence
of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction
may . . . warrant an award of counsel fees." *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008) (quoting
*Sole v. Wyner*, 551 U.S. 74 (2007)). The crucial question in *Dearmore* was whether the preliminary relief the plaintiffs
won in the district court was sufficient to trigger prevailing party status. *Davis v. Abbott*, 781 F.3d 207, 216 (5th Cir.
2015). The district court in *Dearmore* entered a final judgment dismissing the case as moot and simultaneously found
that the plaintiff was a prevailing party entitled to attorneys' fees and costs. *Id.* (citing *Dearmore*, 519 F.3d at 520). In
affirming the district court's prevailing party finding, the Fifth Circuit in *Dearmore* established that, to qualify as a
prevailing party in a preliminary injunction context, a plaintiff: (1) must win a preliminary injunction, (2) based upon
an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing
of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff
from obtaining final relief on the merits. *Davis*, 781 F.3d at 216-17 (citing *Dearmore*, 519 F.3d at 524).

for evaluating prevailing party status: "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Id.* (quoting *Davis*, 781 F.3d at 214). The Magistrate Judge concluded Plaintiff failed to establish any of the elements under the prevailing party test. *Id.* at 30–33.

Regarding the first and second elements, the Magistrate Judge noted Defendant argued the BOP's grant of access to Plaintiff's service animal was not the result of a judgment on the merits or a court-ordered consent decree; rather, "it was the result of [Plaintiff's] voluntary compliance with BOP's policy." *Id.* at 30 (quoting Docket No. 37 at 7). According to the Magistrate Judge, Plaintiff does not argue the Court has entered any order, whether functionally similar to a preliminary injunction or otherwise, that could be characterized as judicially-sanctioned relief. *Id.* Rather, Plaintiff acknowledges no such order has been entered by asking the Court at this time to enter an order "memorializing and approving the result reached by the parties, thus providing judicial sanction to that result, and granting Plaintiff her reasonable attorneys' fees." *Id.* at 30–31 (quoting Docket No. 34 at 6).

Putting aside the lack of judicially-sanctioned relief, the Magistrate Judge next noted the "touchstone" of the prevailing party analysis is whether there has been "a material alteration of the legal relationship" between the parties. *Id.* at 31 (*Grisham v. City of Fort Worth, Texas*, 837 F.3d 564, 568 (5th Cir. 2016) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989))). Although Plaintiff ultimately received the relief she sought in this case, the Magistrate Judge noted the Court was not involved. *Id.* at 31–32 (citing *Doe v. Massachusetts Dep't of Correction*, No. CV 17-12255-RGS, 2019 WL 2913969, at *1 (D. Mass. July 8, 2019) (citing *Buckhannon*, 532 U.S. at 605) ("A defendant's voluntary change in conduct, although

perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary

judicial imprimatur on the change."); also citing *Castañeda-Castillo v. Holder*, 723 F.3d 48, 57

(1st Cir. 2013) ("A party's mere success in accomplishing its objectives . . . is insufficient to confer

it prevailing party status."))). The Magistrate Judge summarized as follows:

> As noted by the court in *Yeh*, although the litigation brought by Plaintiff may well
> have served as a catalyst prompting the parties to reach an agreement which resulted
> in Plaintiff's being allowed to bring her service animal into FCI Texarkana, 'to
> justify a fee award, it is not enough to say that the plaintiff's lawsuit was a "catalyst"
> which inspired timely action by the defendants.' *Yeh*, 2020 WL 1505661, at *8
> (citing *Buckhannon*, 532 U.S. at 609). Rather, it must be shown both that the district
> court litigation resulted in a material alteration of the legal relationship of the parties
> and that there was a judicial *imprimatur* on the change. *Yeh*, 2020 WL 1505661, at
> *8 (citations omitted). These requirements have not happened to date.

*Id.* at 32.

Noting that Plaintiff attempts to remedy this by requesting in her motion for attorneys' fees

that the Court enter an order at this time, the Magistrate Judge next considered Plaintiff's request,

as that would possibly allow Plaintiff to be able to secure judicially-sanctioned relief.[7] *Id.* at 32–

33. The Magistrate Judge denied Plaintiff's requests for several reasons. *Id.* at 34–38.

**First**, the Magistrate Judge noted that although Plaintiff now seeks to broaden her

requested relief, in her FAC Plaintiff only requests the Court enjoin Defendant from temporarily—

and then permanently—refusing to allow Plaintiff to bring her service animal **into FCI Texarkana**

for the purposes of visiting her husband at that specific facility. Report at 33 (citing Docket No.

---

[7] Specifically, Plaintiff requests the Court enter an order that (1) Plaintiff need not demonstrate that her animal is a certified service animal for it to accompany her into the FCI Texarkana facility to visit her husband, so long as it passes a Public Access Test in the form of Exhibit F as administered by the Kuality K9 Dog Training organization in Nolanville, Texas, or a similarly qualified organization; (2) Plaintiff need not demonstrate that her animal is a certified service animal for it to accompany her into any Bureau of Prisons facility into which her husband is moved in the future, so long as it passes a Public Access Test in the form of Exhibit F, as modified if necessary to reflect any specific security concerns of that facility, with such test administered by the Kuality K9 Dog Training organization in Nolanville, Texas, or a similarly qualified organization; and (3) Plaintiff recover her reasonable attorneys' fees from Defendant in an amount to be determined after further evidentiary proceedings before the Court. Report at 12–13 (citing Docket No. 34 at 6–7).

18 at 8 (emphasis added in Report)). As stated by the Magistrate Judge, there is no dispute that since the filing of the amended motion for preliminary injunction Defendant has "permitted Plaintiff to bring her Service Dog into the Facility for the purposes of accompanying her in visiting her husband in the [FCI Texarkana] Facility." *Id.* (quoting Docket No. 34 at 1).

**Second**, the Magistrate Judge stated that any further relief granted at this time would not modify Defendant's behavior "in a way that directly benefits the plaintiff at the time the relief is entered" as required by the third prong of the prevailing party test. Report at 33. Therefore, any requested judicially-sanctioned relief, even if entered, would not be sufficient for Plaintiff to achieve prevailing party status.

**Third**, noting that both Defendant's response in opposition to Plaintiff's request for attorneys' fees and Defendant's separately filed motion to dismiss raise an issue of mootness, the Magistrate Judge stated the Court would lack subject matter jurisdiction over claims that are moot. *Id.* at 33–34. Continuing her discussion of the third reason why the Court should deny Plaintiff's request that the Court now issue an order, the Magistrate Judge moved into a discussion of Defendant's argument that Plaintiff's entire lawsuit is moot,[8] noting this argument dovetails into the third element required to establish prevailing party status for recovery of attorneys' fees. *Id.* at 34.

There is an exception to the mootness doctrine for a controversy that is "capable of repetition, yet evading review." *Id.* at 35. However, the Magistrate Judge stated Plaintiff's claim

---

[8] Defendant asserts Plaintiff's entire lawsuit is now moot because Plaintiff's request to be accompanied by her service animal has been approved by the warden at FCI Texarkana and Plaintiff has been allowed to visit her husband at FCI Texarkana accompanied by her service animal. Report at 34. However, Plaintiff asserts the lawsuit is not moot because Defendant could move her husband to a different facility at a later date and Defendant has not shown it will not repeat its misconduct. *Id.* (citing Docket No. 39 at 2). According to Plaintiff, only when a governmental entity assures the court of continued compliance will voluntary cessation moot the litigation. *Id.* (citing Docket No. 39 at 3). Plaintiff requests a judicial determination with respect to the relevant issues, such that another move to another BOP facility will not force her to litigate this issue again. *Id.* (citing Docket No. 40 at 2).

that her husband may be transferred to another facility in the future does not satisfy this exception.[9]

*Id.* at 38. The Magistrate Judge stated there "is nothing to suggest there is any likelihood that [Plaintiff's] husband will be transferred or that she would not be allowed to bring her current service animal to accompany her husband following any theoretical future transfer," and "[a]ny suggestion of relief based on the possibility of transfer is too speculative to warrant relief." *Id.*

Further noting Defendant has provided assurance the challenged conduct will not recur, the Magistrate Judge concluded the voluntary cessation exception does not apply under these circumstances. *Id.* at 36–38 (noting Plaintiff had represented in briefing before the Court that Defendant has expressed a "willingness to continue to allow Plaintiff to proceed in this manner"). In conclusion, the Magistrate Judge summarized her findings as follows:

> In sum, the Court concludes Plaintiff failed to achieve judicially-sanctioned relief that sufficiently addressed the merits of her claims. Plaintiff was therefore not a prevailing party and is not entitled to attorneys' fees. Although, jurisdictionally speaking, the Court has authority to address Plaintiff's remaining request for attorneys' fees, the Court finds Plaintiff's request for prospective relief is indeed moot. The Court simply 'cannot enjoin that which has already taken place.' *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998) (citing *Cf. In re S.L.E., Inc.*, 674 F.2d 359, 364 (5th Cir. 1982) (noting that '[i]f a dispute has . . . evanesced because of changed circumstances, including the passage of time, it is considered moot.')).

*Id.* at 39.

---

[9] As set forth by the Magistrate Judge, that exception applies only when "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." Report at 38 (quoting *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018) (quoting *Turner v. Rogers*, 564 U.S. 431, 440 (2011))). Under the second prong, the party invoking jurisdiction must show a "demonstrated probability" or "reasonable expectation," not merely a "theoretical possibility," that it will be subject to the same government action. *Id.* (quoting *Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010) (quoting *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir.2010))). Plaintiff bears the burden of proving both prongs. *Id.*

### b.  Analysis

A party who files timely written objections to a Magistrate Judge's report and recommendation is entitled to a *de novo* review of those findings or recommendations to which the party specifically objects.[10] *Williams v. Lambright*, No. 4:18-CV-219, 2019 WL 1275338, at *2 (E.D. Tex. Mar. 20, 2019) (citing 28 U.S.C. § 636(b)(1)(C); also citing FED. R. CIV. P. 72(b)(2)-(3)). In her two-page substantive objections, Plaintiff argues her claims are not moot because the result was achieved voluntarily. She does not object, even generally, to the Magistrate Judge's findings and conclusions regarding her claim for attorneys' fees. Notably, Plaintiff makes no mention of, or objection to, the Magistrate Judge's findings and conclusions that she did not meet her burden to show she is a "prevailing party."

The Court should, therefore, review the Magistrate Judge's prevailing party attorney fees findings for clear error or abuse of discretion and review her legal conclusions to determine whether they are contrary to law. *See Laymance v. Taylor*, No. 6:19-CV-45-JDK-JDL, 2020 WL 33017, at *1 (E.D. Tex. Jan. 2, 2020) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (holding that, if no objections to a magistrate judge's report and recommendation are filed, the standard of review is "clearly erroneous, abuse of discretion and contrary to law")). Reviewing the unobjected-to portions of the Magistrate Judge's Report and Recommendation, the Court finds no clear error or abuse of discretion and no conclusions contrary to law.

Importantly, even if the Court were to conduct a *de novo* review of the Report's findings and conclusions regarding prevailing party attorney fees, the Court would reach the same conclusion. The Supreme Court in *Buckhannon* stated that "[o]ur precedents thus counsel against

---

[10] The Magistrate Judge advised the parties of this requirement and also that failure to file specific, written objections will bar a party from appealing the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the Court, except upon grounds of plain error. Report at 39–40.

holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties." *Automation Support, Inc. v. Humble Design, L.L.C.*, 734 Fed. Appx. 211, 215 (5th Cir. 2018) (quoting *Buckhannon*, 532 U.S. at 605). Indeed, the notion of a change in the legal relationship between the parties correlates with the test embraced both by Texas and the Fifth Circuit for determining prevailing party status. *Id.* To satisfy the standard for prevailing party attorney fees in the Fifth Circuit, a party must (1) obtain judicially-sanctioned relief; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered. *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013).

The Magistrate Judge correctly concluded that Plaintiff failed to establish any of these elements. According to Defendant's response to Plaintiff's objections, far from there being an enforceable judgment on the merits or a court-ordered consent decree creating a material alteration of the legal relationship of the parties, here "the Court has not in any way analyzed the merits of the particular controversy." Docket No. 45 at 5 (citing *Buckhannon*, 532 U.S. at 604; also quoting Report at 30). Plaintiff withdrew her amended motion for preliminary injunction. Under these circumstances, it is clear Plaintiff did not obtain any judicially-sanctioned relief.

To satisfy the second element, Plaintiff must establish the "litigation resulted in a material alteration of the legal relationship of the parties and that there was a judicial *imprimatur* on the change." Report at 32 (quoting *Yeh v. United States Bureau of* Prisons, No. 3:18-cv-943, 2020 WL 1505661, at *8 (M.D. Pa. Mar. 30, 2020)). It is clear that a defendant's voluntary change in conduct, although perhaps achieving the relief that the plaintiff desired, lacks the necessary judicial *imprimatur* to support prevailing party status. *Buckhannon*, 532 U.S. at 605. In this case, not only was there no material alteration of the legal relationship of the parties, as noted above there was

no judicial order or ruling that could be construed as giving "judicial *imprimatur*" to a material alteration. Report at 30. At most, the lawsuit served as a catalyst for the parties' agreeing to a testing protocol that would satisfy the certification requirements the BOP Visitor Policy had required of Plaintiff since before the lawsuit was filed. The Fifth Circuit has said this is not enough. *Davis*, 781 F.3d at 214 (holding "private settlements and a defendant's voluntary change" are not enough).

Regarding the third element, Plaintiff must prove the judicially-sanctioned relief modified Defendant's behavior in a way that directly benefitted her at the time the relief was entered. *Petteway*, 738 F.3d at 137. As the Report points out, to date, no judicially-sanctioned relief has been entered. Report at 32. There has been no preliminary injunction, no judgment on the merits, and no consent decree entered in this case.

Plaintiff concedes this but argues the Court could still grant an order that would qualify as judicially-sanctioned relief. *See* Docket No. 34 at 6–7. However, as urged by Defendant in its response to Plaintiff's objections, such an order could not "directly benefit[] the plaintiff *at the time the relief is entered*" because it is uncontested Plaintiff has already received the relief she requested in her FAC and her now-withdrawn amended motion for preliminary injunction, namely, that she be allowed to bring her service animal into FCI Texarkana  Docket No. 45 at 6–7 (quoting *Petteway*, 738 F.3d at 137 (emphasis added by Defendant)).

As noted above, Plaintiff's objections solely address the Magistrate Judge's conclusion that Plaintiff's claims are now moot. Plaintiff argues Defendant voluntarily changed its position and that the "voluntary cessation of wrongful conduct would not ordinarily lead to mootness." Docket No. 43 at 1–2.  However, as the Magistrate Judge Craven correctly held, the voluntary cessation exception does not apply under these circumstances. Report at 36–38.

The BOP has already granted access to Plaintiff's service animal due to her compliance with policy. There is no relief to grant. Plaintiff's request for injunctive relief is therefore moot. *See Seafarers Int'l Union of N. Am. V. Nat'l Marine Servs.*, 820 F.2d 148, 151 (5th Cir. 1987). "Federal courts are not empowered to decide moot questions." *Hawk v. Fed. Bureau of Prisons*, No. 1:18-cv-1768, 2019 WL 4439705, at *8 (quoting *Doe v. Delie*, 257 F.3d 309, 313 (3rd Cir. 2001)). While a defendant's voluntary cessation of wrongful conduct does not ordinarily lead to mootness, this exception does not apply "when a government entity assures a court of continued compliance, and the court has no reason to doubt the assurance." *Miraglia v. Bd. Of Supervisors of La. State Museum*, 901 F.3d 565, 572 (5th Cir. 2018). "[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith . . . ." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir.2009), *aff'd on other grounds sub nom. Sossamon v. Texas*, ⸺ U.S. ⸺, 131 S. Ct. 1651, 179 L.Ed.2d 700 (2011).

As the Magistrate Judge concluded, "[n]o matter whose actions are credited with mooting the case—whether Plaintiff's compliance with BOP Policy regarding certification or Defendant's approval of Plaintiff's request following the filing of this lawsuit—this case neither invokes the skepticism normally associated with 'defendant-induced mootness' nor raises suspicions of 'litigation posturing.' " Report at 37. In her objections, Plaintiff asserts Defendant has made no assurances to the Court of compliance with the law. Docket No. 43 at 2.

However, in its response to Plaintiff's objections, Defendant states the Government has assured Plaintiff that she will be permitted to bring her certified service dog into FCI Texarkana. Docket No. 45 at 8 (citing Docket No. 42 at 37–38 and Docket No. 34 at 1 ("Defendants have expressed a willingness to continue to allow Plaintiff to proceed in this manner.")). With its response to Plaintiff's motion for attorneys' fees, Defendant attached a copy of the letter Warden

Geter sent to Plaintiff granting her permission to bring her service animal into FCI Texarkana,

wherein Geter stated as follows:

> I am aware that your canine underwent assessment by a professional service animal trainer on October 1, 2019. The trainer provided follow-up clarification, including information the trainer transmitted on October 9, 2019. The professional animal trainer stated the evaluated canine passed a complete Public Access Test and meets the standards of a service animal. Accordingly, based on receipt of this necessary information, your request to be accompanied by this canine as a service animal, when you are otherwise permitted to participate in inmate visitation at FCI Texarkana, is approved.

Docket No. 37 at 5–6 & Ex. F (Warden Geter Letter, Oct. 9, 2019.) The Magistrate Judge found

this sufficient assurance as contemplated in Fifth Circuit case law. The Court agrees.

As a government actor, Defendant's statements are entitled to a presumption of good faith.

*Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017) (citing *Sossamon*, 560 F.3d at 325).

Defendant's expressed willingness to continue to allow Plaintiff to proceed in this same manner

in the future is therefore sufficient to meet Defendant's "lighter" burden to prove that the

challenged conduct will not recur. *Id.* (quoting *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir.

2014)).

In its response to Plaintiff's objections, Defendant asserts "[t]he overarching goal" when

evaluating mootness in a voluntary cessation scenario, "is to determine whether the defendant's

actions are mere 'litigation posturing' or whether the controversy is extinguished." Docket No. 45

at 9 (quoting *Fontenot v. McCraw*, 777 F.3d 741, 748 (5th Cir. 2015)). Here, Plaintiff sought an

injunction but then withdrew that request because Plaintiff agreed to comply with BOP policy and

was granted permission to bring her service animal into FCI Texarkana. Plaintiff now seeks an

"order providing [the Court's] judicial sanction to the result reached by the parties." Report at 5.

However, any such order allowing Plaintiff to bring her service animal into FCI Texarkana would

be meaningless because Plaintiff has already received what she seeks.

Page **23** of **25**

In her objections, Plaintiff argues the "capable of repetition, yet evading review" exception to the mootness doctrine applies. Docket No. 43 at 2. Plaintiff suggests her husband could be transferred or Plaintiff could use a different animal to accompany her.  According to Plaintiff, the fact that these two events occurred during the course of this litigation "moves the likelihood of their recurrence above the speculative range and into the range of 'demonstrated probability.' " *Id.* at n.2. The Court disagrees.

In addition to arguing neither hypothetical is properly before the Court, Defendant argues there is an additional reason this exception is "wholly inapplicable here." Docket No. 45 at 9–10. According to Defendant, this dispute arose out of Plaintiff's refusal to follow BOP policy; once she complied with the policy, the dispute was resolved and Plaintiff was allowed to bring her dog into the BOP facility. *Id.* at 10. Defendant contends, going forward, even if either "theoretical possibility" that Plaintiff posits were to happen, she would control the outcome. *Id.* (citing *Fontenot*, 777 F.3d at 748 ("Unless [the plaintiffs] plan to be driving again without carrying their licenses, they have nothing to fear.")).[11]  Thus, according to Defendant, unless Plaintiff intends to

---

[11] In *Fontenot*, three drivers sued the City of Houston' two private vendors; the Texas Department of Public Safety ("DPS") and its director McCraw; and the state comptroller on behalf of themselves and a putative class for claims based on errors on their driving records. *Fontenot*, 777 F.3d at 744–45. It was undisputed that DPS corrected the driving records for the three named plaintiffs prior to their motion to certify a class (and in one case prior to the filing of the lawsuit against McCraw). *See Pankowski v. Bluenrgy Grp. Ltd.*, No. CV H-15-1668, 2016 WL 7179122, at *3 (S.D. Tex. Dec. 9, 2016) (citing *Fontenot*, 777 F.3d at 749). In *Fontenot*, the Fifth Circuit held as follows:

> The two plaintiffs who had standing to sue McCraw have received a record correction—indeed, received it merely by asking for it. Consequently, there is no reason to believe that Miller and Zamarron continue to have a live controversy with McCraw. The very nature of the records correction controversy, which was precipitated by the plaintiffs' failures to produce a driver's license, counsels that the defendant is not likely 'to return to his old ways.' *Gates v. Cook*, 376 F.3d 323, 337 (5th Cir.2004) (quoting *Laidlaw*, 528 U.S. at 190, 120 S. Ct. at 708). Unless Miller and Zamarron plan to be driving again without carrying their licenses, they have nothing to fear. The controversy as to these plaintiffs has been extinguished.

*Fontenot*, 777 F.3d at 748.

attempt to bring a dog into a BOP facility without providing any certification as to its training, she has nothing to fear.

The Court agrees the controversy has "been extinguished." *Fontenot*, 777 F.3d at 748. The Court "cannot enjoin that which has already taken place." *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998). Accordingly, the Magistrate Judge correctly concluded that Plaintiff failed to meet any of the necessary elements for her to be awarded fees as a "prevailing party."

## VI.   Conclusion

The Court is of the opinion the findings and conclusions of the Magistrate Judge are correct, and the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court hereby **ADOPTS** the Report of the United States Magistrate Judge as the findings and conclusions of this Court. Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Attorneys' Fees (Docket No. 34-2) is **DENIED**. It is further

**ORDERED** that Defendant's Motion to Dismiss (Docket No. 38) is **GRANTED-AS-MODIFIED**.  It is further

**ORDERED** that Plaintiff's above-entitled and numbered cause of action is **DISMISSED WITHOUT PREJUDICE**.

**So ORDERED and SIGNED this 5th day of August, 2020.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE